UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -:

JOHN FLANAGAN,

                 Plaintiff,

     - against -

NEW YORK CITY DEPARTMENT OF
EDUCATION, MINERVA ZANCA, Principal
of the Pan American High School,
CHATZY PRESTON, JUAN S. MENDEZ,
Superintendent of Queens High
Schools, and JOHN DOE, an unknown
individual who is employed by the
NYC Department of Education,

               Defendants.

- - - - - - - - - - - - - - - - - -:

13 Civ. 8456 (LAK) (JCF)

MEMORANDUM
AND  ORDER

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  8/4/16

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

        Plaintiff John Flanagan brought this action alleging that he
was discriminated against on the basis of his race while serving as
a probationary teacher at Pan American International High School
("PAIHS") in Elmhurst, Queens, and retaliated against for filing
complaints regarding the alleged discrimination and for discussing
it with the press.  With Mr. Flanagan's consent, the United States
of America (the "Government") has moved to intervene in this action
and to consolidate, for the purposes of trial, this matter with
United States v. New York City Department of Education, No. 16 Civ.
4291 (the "Federal Government Action").  The Government's motion is
granted.

Background

     A.   Flanagan v. New York City Department of Education

       The facts and procedural history of this case are set out in
detail in my Report and Recommendation on the defendants' motion

for summary judgment.[1] <u>Flanagan v. New York City Department of
Education</u>, No. 13 Civ. 8456, 2015 WL 11142630 (S.D.N.Y. Aug. 21,
2015).   Mr. Flanagan, who is African-American, began his
probationary teaching period at PAIHS in fall 2008 under Principal
Marcella Barros and Assistant Principal Anthony Riccardo, and
received satisfactory performance reviews during their tenure.  <u>Id.</u>
at *1-3.   The allegedly offending conduct began in the fall
semester of 2012, when Minerva Zanca became principal at PAIHS.
<u>Id.</u> at *3.  According to Mr. Flanagan, he began to receive ratings
of "unsatisfactory" on teaching evaluations from Ms. Zanca and Mr.
Riccardo.   <u>Id.</u> at *3-4.   Mr. Riccardo asserts that Ms. Zanca
"ruthlessly targeted" Mr. Flanagan and Heather Hightower, two of
only three African-American teachers at PAIHS at the time.  <u>Id.</u> at
*4.  For example, according to Mr. Riccardo, when he was assigned
to meet with Ms. Hightower to improve her pedagogy, Ms. Zanca
admonished him not to "make her a better teacher."   <u>Id.</u>   Mr.
Riccardo further attests that Ms. Zanca made several racist remarks
about Ms. Hightower and Mr. Flanagan, including likening Ms.
Hightower to a "gorilla in a sweater," describing her hair as
"fucking nappy," and commenting that she had noticed Mr. Flanagan's
"big lips quivering" after he received an unsatisfactory teaching
evaluation.  <u>Id.</u> at *6.  The plaintiff alleges that Ms. Zanca told
her assistant principal that she was "building a record of
observation reports in order to oust Mr. Flanagan and Ms.

---

[1] No party filed objections to the Report and Recommendation,
which the Honorable Lewis A. Kaplan, U.S.D.J., has not yet acted
on.

Hightower, while at the same time recommending that the non-African American probationary teachers at least have their probationary periods extended." Id. at *10.  Ms. Zanca ultimately recommended discontinuing the employment of both Mr. Flanagan and Ms. Hightower, although the recommendation was later rescinded as to Ms. Hightower. Id. at *5.  In addition, the plaintiff notes that the PAIHS theater program headed by Lisa-Erika James, the only other African-American educator at the school, was defunded at the end of the 2012 school year. Id. at *5 n.3.

On November 26, 2013, Mr. Flanagan sued the New York City Department of Education ("NYC DOE"), Ms. Zanca, NYC DOE employee Chatzy Preston, and Juan S. Mendez, Superintendent of Queens County High Schools, alleging, among other claims, that he was discriminated against on the basis of his race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1983; the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq.; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-801 et seq.  In my prior opinion in this case, I recommended granting the defendants' motion for summary judgment (1) on Mr. Flanagan's § 1983 race discrimination and retaliation claims against the NYC DOE, (2) on the due process claims against all defendants, and (3) on the negligence claim against the two individual defendants against whom it was pled.

The Government filed its motion to intervene in this case on June 9, 2016, a motion Mr. Flanagan has indicated he supports. (Declaration of John Flanagan dated June 28, 2016 ("Flanagan

3

Decl."), ¶ 3).  The NYC DOE, however, does not consent to the Government's intervening.

      B.   <u>United States v. New York City Department of Education</u>

      The Government alleges a pattern and practice of retaliation and of discrimination on the basis of race at PAIHS, as well as racial discrimination and retaliation directed against Mr. Flanagan, racial discrimination against Ms. Hightower and Ms. James, and retaliation against Mr. Riccardo.  (Complaint, <u>United States v. New York City Department of Education</u>, No. 16 Civ. 4291 ("Federal Government Complaint"), attached as Exh. A to Declaration of Caleb Hayes-Deats dated June 9, 2016 ("1st Hayes-Deats Decl."), ¶¶ 51-62).  According to the complaint, prior to the 2012-2013 school year -- the school year that Ms. Zanca began serving as principal at PAIHS, having been selected for that position by Superintendent Mendez -- Mr. Flanagan, Ms. Hightower, Ms. James, and Mr. Riccardo each received satisfactory performance reviews.  (Federal Government Complaint, ¶¶ 13, 15-16).  Ms. Zanca explained to Mr. Riccardo that creating a record of unsatisfactory performance by giving a teacher unsatisfactory lesson reviews was the most efficient strategy for discontinuing a teacher's employment at a school.  (Federal Government Complaint, ¶ 18).  Mr. Riccardo asserts that Ms. Zanca informed him that she intended to give unsatisfactory reviews to lessons taught by Mr. Flanagan and Ms. Hightower even before she observed the lessons in question.  (Federal Government Complaint, ¶ 19).  Indeed, Ms. Zanca accused Mr. Riccardo of "sabotaging her plan" when he refused to rate one

of Ms. Hightower's lessons unsatisfactory. (Federal Government Complaint, ¶ 26). She proceeded to give both teachers unsatisfactory reviews throughout the term, and ultimately rated them unsatisfactory for the school year -- the only untenured teachers to receive such reviews. (Federal Government Complaint, ¶¶ 22, 30). The complaint also recounts Ms. Zanca's warning that Mr. Riccardo must not improve Ms. Hightower's teaching, as well as the racist descriptions of Mr. Flanagan and Ms. Hightower noted in Mr. Flanagan's complaint. (Federal Government Complaint, ¶¶ 20-21).

Ms. Zanca also allegedly refused to pay for certain expenses for the theater production Ms. James was mounting, including overtime wages that were required if the students were to rehearse for more than five hours per week, although the school had sufficient money budgeted for the overtime. (Federal Government Complaint, ¶¶ 24-25). Ms. Zanca also refused to offer Ms. James a position in the school's summer program, although she was entitled to such a position. (Federal Government Complaint, ¶ 31). She further filed complaints against Mr. Riccardo with the NYC DOE, which declined to bring charges. (Federal Government Complaint, ¶ 27). In addition, after Mr. Riccardo issued a written statement revealing Ms. Zanca's mistreatment of the three African-American teachers, Ms. Zanca gave him an unsatisfactory performance review. (Federal Government Complaint, ¶¶ 32-33). After Mr. Flanagan complained to Mr. Mendez that he had been discriminated against, he was terminated. (Federal Government Complaint, ¶¶ 35-36, 40).

Both before and during the NYC DOE's investigation of Ms. Zanca's actions, Mr. Mendez repeatedly characterized the complaints against Ms. Zanca as untrue.  (Federal Government Complaint, ¶¶ 38-39).

     The Government filed its complaint on June 9, 2016 (simultaneously moving to intervene in this case).  Approximately one week later, Ms. James and Ms. Hightower filed a motion to intervene in the Federal Government Action and to add claims under federal and state law against the NYC DOE, Ms. Zanca, and Mr. Mendez.  (Memorandum of Law in Support of Lisa-Erika James and Heather Hightower's Motion to Intervene at 5-8 ("James/Hightower Memo."), United States v. New York City Department of Education, Case No. 16 Civ. 4291 (S.D.N.Y. June 17, 2016); [Proposed] Intervenor Complaint, attached as Exh. A to Declaration of Erica L. Shnayder dated June 17, 2016, United States v. New York City Department of Education, Case No. 16 Civ. 4291 (S.D.N.Y. June 21, 2016) ("James/Hightower Intervenor Complaint")).  A few days later, Mr. Riccardo filed a similar motion to intervene.  (Memorandum of Law in Support of Anthony Riccardo's Motion to Intervene, United States v. New York City Department of Education, Case No. 16 Civ. 4291 (S.D.N.Y. June 21, 2016); [Proposed] Intervenor Complaint, attached as Exh. C to Declaration of Noah A. Kinigstein dated June 15, 2016, United States v. New York City Department of Education, Case No. 16 Civ. 4291 (S.D.N.Y. June 21, 2016) ("Riccardo Intervenor Complaint")).  The NYC DOE "does not oppose [those] intervention motions." (Letter of Danielle Dandrige dated June 30, 2016, attached as Exh. A to Letter of Caleb Hayes-Deats dated July

1, 2016).

Discussion

I address the Government's two requests in reverse order, because the resolution of the application to consolidate affects the analysis of the application to intervene.

A.   Consolidation

Rule 42(a) of the Federal Rules of Civil Procedure empowers a court to consolidate two or more actions if the cases "involve a common question of law or fact."  The Government seeks to have this action consolidated with the Federal Government Action for the purposes of trial.  District courts have "broad discretion" when determining whether to consolidate cases, although a court's "paramount concern [must be] for a fair and impartial trial." Johnson v. Celotex Corp., 899 F.2d 1281, 1284-85 (2d Cir. 1990). "[W]hile 'a district court should consider both equity and judicial economy' in assessing whether consolidation is appropriate, 'efficiency cannot be permitted to prevail at the expense of justice' and, thus, 'consolidation should be considered when savings of expense and gains of efficiency can be accomplished without sacrifice of justice.'" Garnett-Bishop v. New York Community Bancorp, Inc., 299 F.R.D. 1, 5 (E.D.N.Y. 2014) (emphasis omitted) (quoting Devlin v. Transportation Communications International Union, 175 F.3d 121, 130 (2d Cir. 1999)).  Thus, the Court should weigh the "specific risks of prejudice and possible confusion" against (1) the risk of inconsistent adjudications, (2) the burden on parties, witnesses, and judicial resources, (3) the

7

temporal advantage gained by trying the actions together rather
than separately, and (4) the cost savings realized by holding a
single, rather than separate, trials.  <u>Johnson</u>, 899 F.2d at 1285
(quoting <u>Hendrix v. Raybestos-Manhattan, Inc.</u>, 776 F.2d 1492, 1495
(11th Cir. 1985)); <u>accord</u> <u>Garnett-Bishop</u>, 299 F.R.D. at 5.

This action and the Federal Government Action share "a common
question of law or fact."  Fed. R. Civ. P. 42(a).  Indeed, as
should be clear from the discussion above, the Federal Government
Complaint includes numerous facts that are identical to those
alleged in this case.  Apparently accepting this, the defendants
recognize the efficiency of consolidating the trials in these
cases; however, they argue that consolidation would prejudice them
because it will (1) delay adjudication of their rights; (2)
"inevitably cause confusion" in light of the "range of legal issues
and standards" presented to the jury; and (3) create a perception
that the individual defendants are being sued by the United States.
(Defendants' Memorandum of Law in Opposition to the United States
of America's Motion to Intervene and Consolidate ("Def. Memo.") at
21).  None of these concerns outweigh the efficiency to be gained
by consolidation.

First, Ms. James, Ms. Hightower, and Mr. Riccardo have moved
to intervene as of right in the Federal Government Action --
applications that the Department of Education appropriately does
not oppose.  <u>See</u> 42 U.S.C. § 2000e-5(f)(1) ("The person or persons
aggrieved shall have the right to intervene in a civil action
brought by the Commission or the Attorney General in a case

8

involving a government, governmental agency, or political subdivision."); EEOC v. Die Fliedermaus, 77 F. Supp. 2d 460, 469 (S.D.N.Y. 1999) (noting that an "aggrieved person" may intervene as of right in a Title VII action brought by the Government and interpose individual claims). Those proposed complaints, like the Federal Government Complaint, allege many of the same acts of racial discrimination by the same actors at the same school during the same time period as in this case. (James/Hightower Intervenor Complaint, ¶¶ 21-27, 33-38, 40-41, 49-51; Riccardo Intervenor Complaint, ¶¶ 18, 22-32). Therefore, although it is true that consolidation will delay the resolution of the individual defendants' liability vis à vis Mr. Flanagan, even without consolidation the defendants would still be defending against congruent claims on nearly identical facts.[2]

For similar reasons, the defendants' worry that consolidation will cause confusion rings hollow. They recognize that, because of the intervention applications of Ms. James, Ms. Hightower, and Mr. Riccardo, the Federal Government Action is unlikely to be a

---

[2] The defendants seem especially concerned about "further delay[ing]" the adjudication of the rights of Chatzy Preston, who "has not been accused of any discriminatory or retaliatory conduct" (Def. Memo. at 11-12) and has not been named in the operative Federal Government Complaint. However, "cases may be consolidated where . . . there are different parties in the complaints." Brown v. Moralles, Nos. 14 CV 1382, 14 CV 2932, 2014 WL 6610992, at *5 (E.D.N.Y. Nov. 18, 2014). More importantly, Ms. Preston's only involvement in the conduct at issue in this case related to the negligence cause of action, which I have recommended be dismissed. Flanagan, 2015 WL 11142630, at *15. Although the Report and Recommendation could have been clearer on this issue, I intended that the dismissal of that negligence claims would dismiss Ms. Preston from the litigation.

"streamlined process," but rather will include "a range of legal issues and standards." (Def. Memo. at 21). But they do not explain how consolidating Mr. Flanagan's case with the Federal Government Action will add complexity. Indeed, their protestations of anticipated difficulties are merely conclusory: they insist that the differing claims will "<u>inevitably</u> cause confusion and prejudice to the existing parties" (Def. Memo. at 21 (emphasis added)), relying on an adverb to do the work of factual and legal support. And there is no explanation as to why carefully crafted jury instructions could not mitigate any confusion or prejudice. <u>See Garnett-Bishop</u>, 299 F.R.D. at 5-6 ("The 'risk of confusion or prejudice [is] avoided in [a] consolidated action where [a] district court use[s] "intelligent management devices" such as thought[ful] verdict forms and cautionary and limiting instructions.'" (first four alterations in original) (quoting <u>Augustin v. Jablonsky</u>, 99 CV 3126, 2001 WL 770839, at *16 (E.D.N.Y. March 8, 2001), <u>rev'd and remanded on other grounds sub nom. In re Nassau County Strip Search Cases</u>, 461 F.3d 219 (2d Cir. 2006))). Moreover, even if the applications for intervention pending in the Federal Government Action are denied, that litigation would still include evidence of discrimination against Mr. Flanagan, Ms. James, Ms. Hightower, and Mr. Riccardo, as such evidence is "relevant to show a policy of intentional discrimination." <u>United States v. City of New York</u>, 717 F.3d 72, 84 (2d Cir. 2013); (Reply Memorandum of Law in Further Support of the United States of America's Motion to Intervene and Consolidate ("Reply") at 3).

Finally, I agree with the Government that the individual defendants' fear of the perception that they are being sued by the Government is not a cognizable prejudice. (Reply at 6). As it points out, Congress has expressly permitted individual plaintiffs to intervene as of right in Title VII actions brought by the Government. 42 U.S.C. §2000e-5(f)(1). Such intervening plaintiffs will often assert claims against individual defendants. (Reply at 6). It is unlikely, then, that Congress believed that the perception of Government enforcement would impair individual defendants' rights.

By contrast, separate trials present the risk of inconsistent adjudications on remarkably similar facts. In particular, Ms. Hightower and Mr. Flanagan were similarly situated as non-tenured teachers at PAIHS and allegedly subjected to similar campaigns at the hands of Ms. Zanca. Moreover, as the defendants recognize, consolidating the cases will be more efficient, both in time and expense. (Def. Memo. at 21). The cases will therefore be consolidated for trial.

    B.    <u>Intervention</u>

        1.    <u>Legal Standard</u>

Title VII gives a court discretion to allow the Attorney General, "upon timely application," to intervene in a civil action "involving a government, governmental agency, or political subdivision" where, as here, the Government certifies "that the case is of general public importance." 42 U.S.C. § 2000e-5(f)(1); (1st Hayes-Deats Decl., ¶ 3). Similarly, Rule 24(b)(2) of the

11

Federal Rules of Civil Procedure allows a federal agency to intervene in a civil action "[o]n timely motion" where a claim at issue is based on a statute administered by the agency.   Before granting such permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."   Fed. R. Civ. P. 24(b)(3); accord In re Holocaust Victim Assets Litigation, 225 F.3d 191, 202 (2d Cir. 2000).   Courts in the Second Circuit take a "'hospitable attitude' toward 'allowing a government agency to intervene in cases involving a statute it is required to enforce.'" Disability Advocates, Inc. v. Paterson, No. 03 CV 3209, 2009 WL 4506301, at *2 (E.D.N.Y. Nov. 23, 2009) (quoting Blowers v. Lawyers Co-operative Publishing Co., 527 F.2d 333, 334 (2d Cir. 1975) (per curiam)); see also 7C Charles Alan Wright et al., Federal Practice and Procedure § 1912, at 472 & n.10 (3d ed. 2007) (noting that courts "allow[] intervention liberally to governmental agencies . . . seeking to speak for the public interest," and collecting cases).

    2.  Timeliness

An application for intervention, "[w]hether . . . claimed of right or as permissive, . . . must be 'timely.'"   National Association for Advancement of Colored People v. New York, 413 U.S. 345, 365 (1973); accord MasterCard International Inc. v. Visa International Service Association, 471 F.3d 377, 391 (2d Cir. 2006); see also Chen-Oster v. Goldman, Sachs & Co., No. 10 Civ. 6950, 2015 WL 4619663, at *5 (S.D.N.Y. Aug. 3, 2015) ("An

12

application for intervention may be granted only if it is promptly
made: 'a threshold consideration under Rule 24(b), as under Rule
24(a), is timeliness.'" (quoting United States v. Pitney Bowes,
Inc., 25 F.3d 66, 74 (2d Cir. 1994))).   "[T]he determination of
whether a motion to intervene is timely must be 'evaluated against
the totality of the circumstances before the court.'" Kamdem-
Ouaffo v. Pepsico, Inc., 314 F.R.D. 130, 134 (S.D.N.Y. 2016)
(quoting D'Amato v. Deutsche Bank, 236 F.3d 78, 84 (2d Cir. 2001)).
Although the length of time the proposed intervenor had actual or
constructive knowledge of its interest in the case is an important
consideration, see Catanzano by Catanzano v. Wing, 103 F.3d 223,
232 (2d Cir. 1996), "[t]he timeliness requirement is not intended
as a punishment for the dilatory and the mere lapse of time by
itself does not make an application untimely."   7C Charles Alan
Wright et al., Federal Practice and Procedure § 1916 (3d ed. 2007)
(footnotes omitted).   Rather, courts should also consider any
prejudice to the existing parties resulting from the delay and
prejudice to the applicant if the request is denied, as well as any
unusual circumstances counseling in favor or against a finding of
timeliness.   See Laroe Estates, Inc. v. Town of Chester, __ F.3d
__, __, 2016 WL 3615777, at *4 (2d Cir. 2016).

The trick in evaluating delay is to determine the event that
activates the proposed intervenor's "obligation to seek to
intervene." Chen-Oster, 2015 WL 4619663, at *6.  Generally, this
will require "identify[ing] with precision the interest that will
be deemed sufficient to trigger [that] obligation" and then

13

"determin[ing] when the intervenor had the requisite knowledge of that interest." Id.  The defendants contend that the Government was aware of its interest in the "allegations of discrimination and retaliation at PAIHS in September 2014 when the [Equal Employment Opportunity Commission ('EEOC')] transmitted the charges of Ms. Hightower, Ms. James[,] and Mr. Riccardo to the [Department of Justice]." (Def. Memo. at 8;  Email of Caleb Hayes-Deats dated May 9, 2016, attached as Exh. 9 to Declaration of Danielle Dandrige dated June 23, 2016 ("Dandrige Decl.")).  But that contention ignores two salient facts.  First, the Government here seeks to intervene in the case filed by Mr. Flanagan, not the cases filed by Mr. Riccardo or Ms. James and Ms. Hightower.  The EEOC did not report Mr. Flanagan's charges to the Civil Rights Division of the Department of Justice; rather, it administratively closed Mr. Flanagan's file, noting that he had filed an action in federal court. Flanagan, 2015 WL 11142630, at *7; (Dismissal and Notice of Rights dated Feb. 4, 2014, attached as Exh. 7 to Dandrige Decl.). Second, the statute authorizing the Government to apply to intervene in this case requires a "certification" that Mr. Flanagan's case "is of general public importance." 42 U.S.C. § 2000e-5(f)(1).

That is not to say that the EEOC's report regarding the charges of Mr. Riccardo, Ms. James, and Ms. Hightower is irrelevant.  Notice of the mischief at PAIHS triggered a duty in the Civil Rights Division to investigate, and that is precisely what it did. (Declaration of Andrea Michelle Brown dated June 30,

14

2016 ("Brown Decl."), ¶ 2).   That investigation was completed in
November 2015, and the Civil Rights Division referred the three
educators' EEOC charges to the U.S. Attorney's Office for the
Southern District of New York.   (Brown Decl., ¶ 7; Declaration of
Caleb Hayes-Deats dated June 30, 3016 ("Second Hayes-Deats Decl."),
¶ 3; Declaration of Caleb Hayes-Deats dated July 19, 2016 ("Third
Hayes-Deats Decl."), attached as Exh. to Letter of Caleb Hayes-
Deats dated July 19, 2016 ("Hayes-Deats Letter"), ¶¶ 3-4).   The
U.S. Attorney's Office then performed its own investigation of the
charges, after which it sought permission from the Principal Deputy
Assistant Attorney General for the Civil Rights Division to
intervene in this action and to file a new action alleging a
pattern and practice of discrimination.[3]   (Second Hayes-Deats
Decl., ¶¶ 4-5; Third Hayes-Deats Decl., ¶¶ 5-6, 11).   In connection
with that application, the U.S. Attorney's Office "described Mr.
Flanagan's case as one of 'general public importance.'" (Third
Hayes-Deats Decl., ¶ 12).   The requested permission was obtained on
April 11, 2016.   (Second Hayes-Deats Decl., ¶ 5; Third Hayes-Deats
Decl., ¶ 13).   Thus, the Government's delay was closer to a period

---

[3]   The investigations were not, perhaps, particularly
efficient, ping-ponging between the Civil Rights Division and the
U.S. Attorney's Office, and marred by missing exhibits and,
apparently, some lack of cooperation among agencies. (Brown Decl.,
¶¶ 3-5).   However, federal courts are loath to dictate to agencies
regarding their internal affairs, including their timetables. See,
e.g., Natural Resources Defense Council, Inc. v. U.S. Food and Drug
Administration, 884 F. Supp. 2d 108, 117-18 (S.D.N.Y. 2012).
Therefore, the defendants' supposition that "the Government had
ample time to [investigate] and to move to intervene before
discovery closed on January 15, 2015[,] and certainly before
dispositive motions were fully submitted six months later on July
30, 2015" (Def. Memo. at 8) is not pertinent here.

of two months than to the nineteen months the defendants claim.[4] (Def. Memo. at 8).

With the length of delay properly calculated, the likelihood that it has prejudiced any of the existing parties disappears. Mr. Flanagan has disavowed any prejudice to his interests, having consented to the intervention. (Flanagan Decl., ¶ 2). The individual defendants assert that they will "bear the uncertainty and burden of continued litigation," including some additional period of discovery and potential motion practice during which "the named individuals would be forced into a holding pattern." (Def. Memo. at 11). This concern is overblown. First, it is unclear how the scant delay in the Government's motion could be seen to cause this prejudice. Second, even if this litigation were wrapped up in the next few months, the individual defendants would still "bear the uncertainty and burden of continued litigation," as they are currently named in at least two other actions involving similar allegations of discrimination. (Complaint, <u>Riccardo v. New York City Department of Education</u>, No. 16 Civ. 4891 (S.D.N.Y. June 23, 2016), ¶¶ 6-7, 17, 21-31; Complaint, <u>James v. New York City Department of Education</u>, No. 16 Civ. 4844 (S.D.N.Y. June 22, 2016),

---

[4]    The Government's initial submissions regarding the investigation were deficient, focusing on the claims of Ms. James, Ms. Hightower, and Mr. Riccardo, with no mention of Mr. Flanagan's action -- the one in which it seeks to intervene.  I therefore ordered the Government to provide some background into the events that led to the certification of Mr. Flanagan's case as one of "general public importance."  (Order dated July 14, 2016).  The Government's warning that its decision on certification is generally considered unreviewable (Hayes-Deats Letter at 1) is unnecessary as I am evaluating the timeliness of the Government's actions, not the substance of the certification.

¶¶ 12-15, 20, 22-23, 25, 27-28, 34-38, 42, 51). Moreover, they are likely to become involved in the litigation the Government has filed against the NYC DOE: as noted above, Ms. James, Ms. Hightower, and Mr. Riccardo have all moved to intervene in that case and add claims against Mr. Mendez and Ms. Zanca. See 42 U.S.C. § 2000e-5(f)(1); see Die Fliedermaus, 77 F. Supp. 2d at 469 (noting that an "aggrieved person" may intervene as of right in a Title VII action brought by the Government and interpose individual claims). The individual defendants' claims of prejudice are thus undermined. The motion is timely.

   3. <u>Undue Delay and Prejudice</u>

  Rule 24(b)(3) requires a court weighing an application for permissive intervention to determine whether intervention will unduly delay or prejudice the adjudication of the existing parties' rights. As the cases will be consolidated for trial, any complaint that intervention will unduly delay the proceedings dissipates. Additional discovery by the Government will not postpone adjudication of the individual defendants' rights, as it will be accomplished in tandem with the Federal Government Action. Nor will intervention increase the defendants' costs. The New York City Law Department represents the NYC DOE and the individual defendants in this action as well as the NYC DOE in the Federal Government Action. Counsel for the defendants would thus engage in the same discovery whether or not the Government intervened in this

case.[5]  Finally, the defendants' assertion that "it will be difficult, if not impossible, to correct the perception by a jury, not to mention the public, that the individual defendants are being sued by the Government" (Def. Memo. at 15) fares no better here than it did in relation to the Government's consolidation request. Again, Congress has expressly allowed the Government to intervene in a civil action brought by an individual against government entities where the case raises an issue of general public importance.  42 U.S.C. § 2000e-5(f)(1).  The defendants do not explain why the Court will be unable to manage potential jury misperceptions with clear, targeted instructions.  And the individual defendants do not explain why being sued under Title VII by the Government would do greater damage to their reputation than being sued by the four individual plaintiffs who have accused them of racial discrimination, especially in light of the publicity that these allegations have already received in the press.  See, e.g., Flanagan, 2015 WL 11142630, at *6.

    4.  Other Considerations

    In exercising its discretion to allow permissive intervention, a Court may -- but need not -- examine other factors such as the nature and extent of the proposed intervenor's interests in the

---

[5] The defendants make the curious claim that "the Government's intervention will result in embroiling the individually-named defendants in a case where there are, and can be no, [sic] claims asserted against them."  (Def. Memo. at 17).  But allowing the Government to intervene in this action will not "embroil" the individual defendants in an additional case; rather, it will allow the Government to assert a pattern and practice claim in this case.

litigation, whether those interests are adequately represented by existing parties, and whether intervention will contribute to full development of underlying facts.  See, e.g., Spangler v. Pasadena City Board of Education, 552 F.2d 1326, 1329 (9th Cir. 1977); Kruse v. Wells Fargo Home Mortgage, Inc., No. 02 CV 3089, 2006 WL 1212512, at *4 (E.D.N.Y. May 3, 2006); see also Citizens Against Casino Gambling in Erie County v. Hogen, 417 F. App'x 49, 50-51 (2d Cir. 2011).

The defendants have not explained why I should examine these factors in this case.  And, indeed, Second Circuit precedent indicates that these concerns might not be relevant where a right to intervene is granted, either conditionally or unconditionally, by statute.  See R Best Produce, Inc. v. Shulman-Rabin Marketing Corp., 467 F.3d 238, 240 (2d Cir. 2006) ("Where, as here, a statute does not provide either an unconditional or a conditional right to intervene, 'an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action.'" (internal citation omitted) (quoting In re Bank of New York Derivative Litigation, 320 F.3d 291, 300 (2d Cir. 2003))).  This is likely because in such cases Congress has already determined that the individual or entity that has been granted a right to intervene has a sufficient interest in the existing litigation to support that intervention.

The defendants do not seem to recognize this.  For example,

they argue that Title VII "makes no mention as to what extent the government can seek to intervene," and contend that Rule 24(b)(2) -- which is directed at intervention by the Government when a claim or defense is based on a statute the Government administers -- "provid[es] some parameters" as to that extent.  (Def. Memo. at 18).  However, neither the statute nor the rule indicates that the "extent" of intervention is somehow limited.  The statute requires only that the case "involv[e]" a government, governmental agency, or political subdivision, 42 U.S.C. § 2000e-5(f)(1); the rule requires only that the action contain a claim or defense based on a statute administered by the putative intervening agency, Fed. R. Civ. P. 24(b)(2).  That is, the statute and rule appear to contemplate that the Government will intervene in litigation that includes parties other than a governmental entity and claims other than those brought under statutes that it administers; but neither suggests that this limits the Government's interest such that its request to intervene should be denied.  For these reasons, if I were to examine the sufficiency of the Government's interest in this litigation, I would find that intervention was proper.  See 7C Charles Alan Wright et al., Federal Practice and Procedure § 1912 (3d ed. 2007) ("Underlying . . . [Rule 24(b)(2)] is a broad concern that courts should mold their traditional methods in order to advance the public interest." (footnote omitted)).

Conclusion

The Government's motion (Docket no. 58) seeking to intervene in this action and to consolidate it with United States v. New York

City Department of Education, Case No. 16 Civ. 4291, is granted in

its entirety.


SO ORDERED.


James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
      August 4, 2016

Copies transmitted this date:

Noah A. Kinigstein, Esq.
Law Office of Noah A. Kinigstein
315 Broadway, Suite 200
New York, NY 10007

Jay Y. Kim, Esq.
Stephen A. Sutro, Esq.
Michael Nacchio, Esq.
William A. Grey, Esq.
Danielle M. Dandrige, Esq.
New York City Law Department
100 Church Street
New York, NY 10007

Caleb Hayes-Deats, Esq.
Assistant U.S. Attorney
86 Chambers St.
New York, NY 10007