UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JOHN FLANAGAN,

                Plaintiff,

      -against-                                      13-cv-8456 (LAK)

NEW YORK CITY DEPARTMENT OF EDUCATION, et al.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

> Noah Kinigstein
> *Attorney for Plaintiff*

> Alan M. Schlesinger
> Jay Y. Kim
> Zachary B. Carter
> CORPORATION COUNSEL OF THE CITY OF NEW YORK
> *Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

        Defendants move for summary judgment dismissing the complaint of this former New York City probationary teacher whose probationary service was terminated, allegedly in violation of his civil rights.   In a report and recommendation,[1] Magistrate Judge James C. Francis IV recommended that the motion be granted in part and denied in part.   Plaintiff objects to three

---

[1]      DI 54.

Case 1:13-cv-08456-LAK-JCF   Document 80   Filed 12/07/16   Page 2 of 9

2

specific recommendations by Judge Francis, viz. his recommendation that the following claims be dismissed on the grounds indicated below:

1.   The claim against the City under *Monell* and its progeny on the grounds that (a) neither Superintendent Mendez was nor Principal Zanca was acting as a final policy maker in the relevant respects because the termination decision was appealable to the New York City Schools Chancellor and, in any case, (b) Principal Zanca was not acting as a final policy maker because "the Chancellor's regulations identify the factors that a principal must consider in assessing a teacher and provide for an appeal from the principal's rating."[2]

2.   The negligence claim on the grounds that "the plaintiff has not specified what legal duty, if any, was owed to him by Superintendent Mendez or Ms. Preston" and, in any case, "it is undisputed that the delay in delivery did not cause any injury" because Superintendent Mendez would have made the same decision to terminate plaintiff's probationary status even if he had received plaintiff's communication, which allegedly was delivered too late as a result of negligence.[3]

3.   The due process claim on the ground that plaintiff, as a probationary teacher, had no property interest in continued employment.[4]

The objections with respect to two of the recommendations warrant some discussion.

---

[2]   R&R at 36-38.

[3]   *Id.* at 39.

[4]   *Id.* at 40-42.

*The* Monell *Claim*

Plaintiff objects to Judge Francis' recommendation with respect to the *Monell* claim on two grounds.  First, he contends – without pointing to any such evidence in the record – that the Schools Chancellor in 2011 delegated "the power to institute and resolve disciplinary charges against teaching . . . staff members to" district superintendents.[5]  Second, although he acknowledges that Chancellor's Regulation C-31[6] makes termination of probationary teachers appealable to the Schools Chancellor, he disputes whether that avenue was available to him.

As an initial matter, the Court notes that neither of these arguments was made before Judge Francis.  Plaintiff confined himself to the conclusory assertions that Mendez was a policy maker and that his actions with respect to Zanca's behavior constituted ratification by a person for whom the City is responsible.[7]  The defendants, for their part, did no more than cite *McDonald v. Bd. of Educ. of City of New York*[8] for the propositions that "the superintendent's power to discharge employees 'is circumscribed by the [c]hancellor and the [b]oard's authority to overrule the superintendent,' and, accordingly, 'the superintendent cannot be said to be the final policymaker.'"[9]

The first of plaintiff's arguments – the delegation contention –  fails for the simple

---

[5]  DI 55, at 3.

[6]  Regulation C-31 of the Chancellor, New York City Bd. of Educ. (Oct. 16, 2012), http://docs.nycenet.edu/docushare/dsweb/Get/Document-51/C-31.pdf   (hereinafter "Regulation C-31").

[7]  DI 45, at 30.

[8]  No. 01-CV-1991 (NRB), 2003 U.S. Dist. LEXIS 13338, at *14 (S.D.N.Y. July 31, 2003).

[9]  DI 49, at 9.

4

reason that it is unsupported by any evidence.  Plaintiff has pointed to no evidence that the Schools Chancellor made the claimed delegation in 2011 or at any other time.  There is no evidence of the terms of any such delegation. In any case, it is far from self-evident that termination of a probationary teacher would constitute the resolution of disciplinary charges.  As plaintiff would have the burden of proof at trial with respect to the satisfaction of *Monell*,[10] the failure to adduce admissible proof that the actions of which plaintiff complains were taken by a person to whom final policy making authority had been delegated is fatal to his attempt to defeat summary judgment dismissing the *Monell* claim on such a basis.[11]

The second argument – the contention that the Regulation C-31 appellate remedy did not apply to him – is related to the first.  But an additional word of background is appropriate.

One of my colleagues helpfully has summarized the pertinent background:

"Where the contention is not that the actions complained of were taken pursuant to a local policy that was formally adopted or ratified but rather that they were taken or caused by an official whose actions represent official policy, the court must determine whether that official had final policymaking authority in the particular area involved.  It does not suffice for these purposes that the official has been granted discretion in the performance of his duties.  Only those municipal officials who have final policymaking authority may by their actions subject the government to § 1983 liability.

"Whether the official in question possessed final policymaking authority is a legal question, which is to be answered on the basis of state law. The relevant legal materials[ ] include state and local positive law, as well as custom or usage having the force of law.  The matter of whether the official is a final policymaker under state

---

10

*E.g., Jeffes v. Barnes,* 208 F.3d 49, 57-58 (2d Cir.), *cert. denied, Cnty. of Schenectady v. Jeffes,* 531 U.S. 813 (2000).

11

*See, e.g., Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 128-29 (2d. Cir. 2004); *Zambrano-Lamhaouhi v. N.Y.C. Bd. of Educ.*, 866 F. Supp.2d 147, 175 (S.D.N.Y. 2011).

law is to be resolved by the trial judge before the case is submitted to the jury."[12] From this it follows that "when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies."[13]

With this background in mind, the reason for plaintiff's argument that the appellate procedure established by Regulation C-31 did not apply to him becomes clear. If there was no appellate remedy, then Superintendent Mendez's decision arguably reflected an exercise of final policy making authority. If Regulation C-31 did apply to plaintiff, then the Chancellor's retention of ultimate authority made the Chancellor the final policy maker. So we turn to Regulation C-31.

Regulation C-31 sets forth the procedures to be followed to "terminate a non-tenured employee."[14] Broadly speaking, those procedures include: a determination of whether to terminate the employee after a so-called technical assistance conference, the opportunity for appellate review of an adverse decision upon request by the employee, and ultimately further review by the Chancellor.[15]

---

[12]

      *Legal Aid Soc'y v. City of New York,* 114 F. Supp.2d 204, 231-32 (S.D.N.Y. 2000) (quoting *Jeffes, 2*08 F.3d at 57 (internal citations, alterations, and quotation marks omitted)).

[13]

      *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988) (plurality opinion); *see also, e.g., Scala v. City of Winter Park,* 116 F.3d 1396, 1401-03 (11th Cir. 1997); *Manor Healthcare Corp. v. Lomelo,* 929 F.2d 633, 637-38 (11th Cir.), *reh'g denied,* 942 F.2d 798 (11th Cir. 1991); *Worsham v. City of Pasadena,* 881 F.2d 1336, 1340-41 & n.9 (5th Cir. 1989).

[14]

      *Segal v. City of New York,* 459 F.3d 207, 215-16 (2d Cir. 2006).

[15]

      *Id.*; *see Blasi v. N.Y.C. Bd. of Educ.,* Nos. 00–CV–5320 (RRM)(MDG), 03–CV–3836 (RRM)(MDG), 2012 WL 3307227, at *7 (Go, M.J.) ("Since plaintiff was a probationary employee, the procedures governing his termination are set forth in Chancellor's Regulation C–31 governing the licensing of non-pedagogical employees."), *report and recommendation adopted,* 2012 WL 3307346 (E.D.N.Y. Aug. 12, 2012); *Koehler v. New*

In view of the fact that Regulation C-31 offered plaintiff, although he was a probationary employee, an opportunity for extensive consideration of the recommendation that he be terminated through appellate review by the Chancellor, it was the Chancellor who was the final

---

*York City,* No. 04 Civ. 6929 (RMB), 2005 WL 1123758, at *3 (S.D.N.Y. May 11, 2005) ("Regulation of the Chancellor C-31. . . sets forth procedures to be followed to terminate the New York City license(s) of untenured pedagogical employees.") (internal quotation marks omitted); *Behrend v. Klein,* Nos. 04–CV–5413 (NGG)(CLP), 04–CV–5414 (NGG)(CLP), 2010 WL 627696, at *1-2 (E.D.N.Y. Feb. 22, 2010); *Kahn v. N.Y.C. Dep't of Educ.,* 18 N.Y.3d 457, 463 n.1 (2012) ("Regulation C–31. . . sets forth procedures to be followed to terminate New York City licenses of untenured pedagogical employees."); Regulation C-31 ¶¶ 1-4.

The Second Circuit in *Segal* summarized its provisions as follows:

"Chancellor's Regulation C–31 sets out the procedures under which a non-tenured Department employee may be terminated.  This regulation provides that the District Superintendent must notify the Department's Office of Appeals and Reviews of the need to terminate a non-tenured employee.  The Office of Appeals and Reviews will then convene a 'Technical Assistance Conference,' without the employee's participation, at which the conferees review the relevant facts provided by the Superintendent to determine whether it is advisable to fire the employee.  The conferees submit their recommendation to the Chancellor.  If the Chancellor accepts a recommendation to terminate the employee, he may issue a notice of discontinuance, at which point the employee is formally terminated by the Department, or he may simply indicate his intent to terminate the employee.  Either way, the Chancellor must provide the employee with the specific reasons for his decision.  The employee has 15 school days from the date of service in which to appeal the Chancellor's decision either terminating her employment or expressing an intent to do so.  During the pendency of the review, an employee who has not been terminated is suspended without pay.  Thus, the C–31 regulation provides for pre- or post-termination review, depending on whether the Chancellor determines that, in a given case, immediate dismissal is warranted.

"The C–31 regulation provides for extensive procedures to review the Chancellor's initial decision: (1) the right to a hearing, if the employee requests one; (2) notice, at least three weeks before the hearing, of the time, date, and place of the hearing; (3) written notice of the employee's rights at the hearing; and the rights (4) to be represented by an advocate selected by the employee's union, (5) to present all relevant evidence, (6) to call witnesses on the employee's behalf, (7) to cross-examine witnesses, and (8) to make an oral presentation.  The hearing must be held within one year of the employee's request for a hearing.  At the hearing, the Department must present evidence to support its decision but is not obligated to call witnesses.  The Chancellor is authorized to uphold his previous decision to terminate, to execute his previous intention to terminate, or to reinstate the employee.  The employee is notified in writing of the Chancellor's decision."  459 F.3d at 215-16.

policy maker, not Superintendent Mendez.

Plaintiff seeks to avoid this conclusion by asserting that Regulation C-31 did not apply to him and that Superintendent Mendez therefore was the final policy maker. He points to the opening language of the Regulation, which provides in pertinent part:

> "The process set forth below applies to license and certificate holders in the following categories:
>
> * * *
>
> "5.    Persons for whom probationary service has been discontinued or who have been denied tenure and for whom termination of license is recommended."

He contends that Regulation C-31 did not apply to him because he was not one for whom termination of license was recommended.[16] Thus, his argument depends upon the premise that the phrase "and for whom termination of license was recommended" modifies not only the phrase it

---

[16]    As Judge Garaufis helpfully explained in *Behrend:*

"If the Department is not satisfied with a teacher's performance during the probationary period, however, it has at least three options. First, the Department can issue an unsatisfactory rating and a description of problematic conduct. Second, the Department can 'discontinue' the teacher's probationary service at a particular school. Third, and finally, the Department can terminate the teacher's New York City teaching license. Chancellor's Regulation C–31 enumerates grounds for license termination ranging in seriousness from 'incompetent and inefficient service' to criminal misconduct. Once a teacher's license has been terminated, the Department places her on an 'Ineligible List' that prevents her from being hired in city schools.

"The Department's disciplinary options have differing impacts on a teacher's career. A teacher who receives an unsatisfactory rating or whose probationary service is discontinued remains eligible to apply for positions in other city public schools. If, however, a teacher's license is revoked and she is placed on the 'Ineligible List,' she is barred from teaching in New York public schools, at least until she is able to successfully reapply for a license." 2010 WL 627696, at *1

In this case, the action taken with respect to plaintiff was discontinuance of his probationary service. First Am. Cpt. [DI 20] ¶ 26 & Exs. F, G, K.

immediately follows – "or who have been denied tenure and" but also the earlier phrase "[p]ersons for whom probationary service has been discontinued." In view of the cases, federal and state, cited above, this Court holds that Regulation C-31 applied to plaintiff regardless of whether his New York City teaching license was terminated. Accordingly, his objection to the recommendation that the *Monell* claim be dismissed is overruled.

### The Negligence Claim

Plaintiff objects to the recommendation that his negligence claim be dismissed on the basis that there was a genuine issue of material fact as to whether Superintendent Mendez would have changed his mind had he received plaintiff's response – which allegedly failed to reach Mendez in time in consequence of negligence – by Mendez or others. He overlooks entirely the fact that Judge Francis recommended dismissal not only on the ground that there was no evidence that Mendez would have changed his mind had he received plaintiff's letter, but also on the ground that plaintiff had failed to demonstrate the existence of any legal duty owed by any of the defendants on the negligence claim that could have been breached by the delivery delay. Thus, there has been no objection to that aspect of the report and recommendation. The issue therefore has been waived. In any case, even if the Court were to review that aspect of the magistrate judge's report and recommendation *de novo,* it would reach the same conclusion.

9

*Conclusion*

The Court has considered all of plaintiff's objections and found all to be without merit. Accordingly, defendants' motion for summary judgment dismissing the first amended complaint is granted to the extent that (a) the negligence, due process, and Article 78 claims (the third, fourth and sixth claims for relief) and (b) the Section 1983 claim (the first claim for relief) insofar as it is brought against the Department of Education (in reality, The City of New York) are dismissed and denied in all other respects.

SO ORDERED.

Dated:            December 7, 2016

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)